1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    DANIEL ALEM,                                    No.  2:17-CV-0343-KJM-DMC-P

12                   Plaintiff,

13          v.                                         <u>FINDINGS AND RECOMMENDATIONS</u>

14    M. CURRY, et al.,

15                   Defendants.

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983. Pending before the Court are defendants' motion for summary judgement (ECF

19    No. 34); plaintiff's opposition (ECF No. 37); and defendants' reply (ECF No. 38).

20

21                              **I. PLAINTIFF'S ALLEGATIONS**

22          Plaintiff, Daniel Alem, names the following as defendants: 1) M. Curry; 2) J. Ojo;

23    and 3) Eric Arnold. At all relevant times, plaintiff was an inmate at Solano State Prison in

24    Vacaville, California. According to plaintiff, on November 23, 2015, Officer Curry re-housed

25    plaintiff into a shared cell with an inmate of the same race. ECF No. 1, pg. 15. Plaintiff took issue

26    with his cell-mate's status as an "active prison gang member" and requested to be housed with

27    someone of a different race. <u>Id.</u> Officer Curry denied plaintiff's request and, as a result of

28    plaintiff's objections to the housing assignment, cited plaintiff for a rules violation. <u>Id.</u> Plaintiff

1

1  claims that Curry's housing decisions were made to "[maintain] ethnically (racially) segregated

2  housing . . ." Id. at 15.

3         On December 15, 2015, Officer Ojo interviewed plaintiff about the housing

4  incident involving officer Curry. Id. at 16. During this interview plaintiff admitted that he refused

5  Curry's housing orders and Ojo ultimately found plaintiff guilty of violating the prison's rules. Id.

6  As a result, plaintiff lost sixty-one days of privileges including access to: 1) entertainment

7  devices; 2) the yard; 3) day-room programs; and 4) phone access to contact friends and family. Id.

8  at 17. Plaintiff claims that Ojo's interview failed to consider that full context of plaintiff's

9  situation.

10         Plaintiff appealed Ojo's finding through the prison's multi-level grievance process.

11  On April 13, 2016, Warden E. Arnold denied plaintiff's administrative grievance at the second

12  level. Id. at 27. Plaintiff claims that Arnold failed to address his allegations that Curry's actions

13  were racially motivated, and that Arnold's denial constituted support for "segregationist

14  behavior." Plaintiff's grievance was subsequently denied at the third level on July 25, 2016. Id. at

15  24.

16

17                    **II. PROCEDURAL HISTORY**

18         On February 16, 2017, plaintiff filed a prisoner civil rights complaint against

19  Curry, Ojo, Arnold, and the California Department of Corrections and Rehabilitations (CDCR),

20  alleging that their conduct violated his Equal Protection rights under the Fourteenth Amendment.

21  See ECF No. 1. On February 27, 2019, the CDCR was dismissed as a defendant to the action. See

22  ECF No. 20. On November 8, 2019, the remaining defendants submitted a motion for summary

23  judgement. See ECF No. 34. On December 5, 2019, plaintiff submitted an opposition to

24  defendants' motion. See ECF No. 37. On December 12, 2019, defendants submitted a reply to

25  plaintiff's opposition. See ECF No. 38. The Court now reviews defendants' motion for summary

26  judgement.

27  ///

28  ///

**III. STANDARD FOR SUMMARY JUDGEMENT**

The Federal Rules of Civil Procedure (FRCP) provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record

3

1    taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

2    'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

3    claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

4    of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

5            In resolving the summary judgment motion, the court examines the pleadings,

6    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

7    <u>See</u> Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, <u>see</u> <u>Anderson</u>,

8    477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

9    court must be drawn in favor of the opposing party, <u>see</u> <u>Matsushita</u>, 475 U.S. at 587.

10    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

11    produce a factual predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen</u>

12    <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.

13    1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

14    judge, not whether there is literally no evidence, but whether there is any upon which a jury could

15    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

16    imposed." <u>Anderson</u>, 477 U.S. at 251.

17

18                    **IV. THE PARTIES' EVIDENCE**

19       A.      <u>**Defendants' Evidence**</u>

20            Defendants' motion for summary judgment is supported by the following sworn

21    declarations: 1) A. Petty, ECF No. 34-4, pgs. 4-85; 2) J. Spaich, ECF No. 34-4, pgs. 86-130; 3)

22    M. Curry, ECF No. 34-4, pgs. 131-136; and 4) E. Arnold, ECF No. 34-4, pgs. 137-161.

23    Defendants also submit a Statement of Undisputed Facts discussed below in section (IV)(C).

24       B.      <u>**Plaintiff's Evidence**</u>

25            In support of his opposition, plaintiff relies on his sworn declaration, ECF No. 37,

26    pgs. 1-6 and the following exhibits:

27           <u>Exhibit 1</u>          Declaration of M. Curry in Support of Motion to

28                             Dismiss. ECF 37, pgs. 34-36.

| | | |
|---|---|---|
| Exhibit 2 | | Department of Corrections and Rehabilitation Title 15, § 3315. <u>Id.</u> at 37-40. |
| Exhibit 3 | | Declaration of E. Arnold in Support of Motion to Dismiss. <u>Id.</u> at 41-43. |
| Exhibit 4 | | Excerpt of plaintiff's deposition (Daniel Alem) taken on July 15, 2019. Deposition page 123. <u>Id.</u> at 44-45. |
| Exhibit 5 | | Department of Corrections and Rehabilitation Title 15, § 3269. Id. at 46-48. |
| Exhibit 6 | | Department of Corrections and Rehabilitation Title 15, § 3269.1. Id. at 49-50. |

C.   **Defendant's Statement of Undisputed Facts and Plaintiff's Response**

The following are: 1) defendant's Statement of Undisputed Facts, ECF No. 34-3; and 2) plaintiff's responses, ECF No. 37, pgs. 7-18.

| Defendants' Statement | Plaintiff's Response |
|---|---|
| **Failure to Exhaust Administrative Remedies** | |
| 1. Between November 23, 2015 and February 16, 2017, Plaintiff submitted the following appeals to the CSP-Solano IAO: (1) CSP-S-16-00534; (2) CSP-S-16-01471; (3) CSP-S-16-01768; (4) CSP-S-16-02310; (5) CSP-S-02480; and (6) CSP-S-1602625.<br><br>(Declaration of A. Petty in Support of Motion for Summary Judgment (Petty decl.) ¶13(a)-(f).) | 1. Admit. |
| 2. Of the appeals that Plaintiff submitted to the CSP-Solano IAO from November 23, 2015 through February 16, 2017 only CSP-S-16-00534 discussed the allegations arising on November 3, 2015.<br><br>(Petty decl., Exhibits A-G.) | 2. Admit. |
| 3. The CSP-Solano Inmate Appeal Office ("IAO") received inmate appeal/grievance log number CSP-S-16-00534 on February 29, 2016. The first level of review was bypassed. A second level response to the appeal was provided on April 13, 2016 that denied the appeal.<br><br>(Petty decl., ¶ 13(a).) | 3. Admit. |

| | |
|---|---|
| 4. Between November 23, 2015 and February 16, 2017, Plaintiff submitted only two appeals for third level review: (1) SOL-16-00534; and (2) CSP-S-16-02310.<br><br>(Declaration of J. Spaich in Support of Motion for Summary Judgment ("Spaich decl."), ¶¶ 9-11.) | 4. Admit. |
| 5. OOA accepted inmate appeal/grievance log number SOL-16-00534 for third level review on May 19, 2016. This is the same appeal as CSP-S-16-00534. The appeal was denied on July 25, 2016. Plaintiff submitted a CDCR Form 22 request relating to this appeal on August 10, 2016, but it was screened-out on August 12, 2016.<br><br>(Spaich decl., ¶ 10.) | 5. Admit. |
| 6. OOA accepted inmate appeal/grievance log number SOL-16-02310 for third level review on December 14, 2016. This is the same appeal as CSP-S-16-02310. This appeal was denied on February 23, 2017.<br><br>(Spaich decl., ¶ 11.) | 6. Admit. |
| 7. SOL-16-00534 does not contain any complaints regarding Defendant J. Ojo's alleged failure to consider Plaintiff's equal protection argument during the rules violation report hearing, or any allegations against Defendant J. Ojo, whatsoever.<br><br>(Spaich decl., Exhibit B.) | 7. Deny. SOL-16-00534 does not contain any allegations against J. Ojo but Third Level Appeals examiner K.Z. Allen acknowledged defendant Ojo's involvement, stating he acted appropriately in his decision in find [sic] plaintiff guilty of the RVR[1] 115 and denied plaintiff's Third level appeal.<br><br>(page 24-25 of the Complaint) (page 5-6 #31-37 of plaintiff's declaration in opposition to defendants' summary judgment motion.) |
| 8. SOL-16-00534 does not contain any complaints regarding Defendant E. Arnold's alleged failure to consider Plaintiff's equal protection claims on his alleged review of Plaintiff's inmate appeal/grievance, or any allegations against Defendant E. Arnold, | 8. Deny. Defendant Arnold was the second level Respondent and denied plaintiffs second level appeal concerning plaintiff's equal protection claims. |

---

[1]   RVR refers to a "Rules Violation Report"

| | |
|---|---|
| whatsoever.<br><br>(Spaich decl., Exhibit B.) | (page 22-23 of the Complaint) (page 5 # 24-30 of plaintiff's declaration in opposition to defendants' summary judgment motion.) |
| 9. CSP-S-16-02310 does not contain any complaints regarding Defendant J. Ojo's alleged failure to consider Plaintiff's equal protection argument during the rules violation report hearing, or any allegations against Defendant J. Ojo, whatsoever.<br><br>(Spaich decl., Exhibit C.) | 9. Admit. |
| 10. CSP-S-16-02310 does not contain any complaints regarding Defendant E. Arnold's alleged failure to consider Plaintiff's equal protection claims on his alleged review of Plaintiff's inmate appeal/grievance, or any allegations against Defendant E. Arnold, whatsoever.<br><br>(Spaich decl., Exhibit C.) | 10. Admit. |
| 11. Plaintiff admits that he did not address any issues against Defendants J. Ojo or E. Arnold in the applicable inmate appeal/grievance.<br><br>(Deposition of Daniel Alem taken on July 15, 2017 ("Alem depo"), 109:10-110:25.) | 11. Deny. Plaintiff did not address issues against defendant J. Ojo in the Inmate appeal CSP-S-16-00534 but did address issues<br><br>against defendant Arnold in the inmate appeal.<br><br>(page 31 and 33 of the Complaint) (page 5 # 24-30 of plaintiff's declaration in opposition to defendants' summary judgment motion.) |
| **Equal Protection Claim** | |
| 12. On November 23, 2015, M. Curry attempted to re-house Plaintiff, from cell 9-239U to 9-114U for the purpose of compaction, which is the maximum proper utilization of beds within an institution. In other words, compaction involves housing as many inmates as possible with cell-mates, when appropriate and safe, to ensure that as many beds and cells within the institution are used most efficiently to accommodate | 12. Deny. Compaction is a method used to consolidate some race inmates.<br><br>(page 3, 4-8, 14-17 of plaintiff's declaration in opposition to defendants' summary judgment motion.) |

| | |
|---|---|
| additional inmates in a housing unit.<br><br>(Declaration of M. Curry in Support of Motion for Summary Judgment ("Curry decl."), ¶ 2.) | |
| 13. On November 23, 2015, it was the routine practice of CDCR, pursuant to the CDCR Departmental Operations Manual ("DOM") section 54055.7, to house inmates on the first available and appropriate bed, consistent with their Integrated Housing Code (IHC). An Integrated Housing Code is a housing code that reflects an inmate's eligibility to be racially integrated in a housing environment. An inmate's IHC is determined during reception center processing.<br><br>(Curry decl., ¶ 3.) | 13. Deny. CDCR's Routin [sic] practice is to house inmates by race.<br><br>(page 4 # 16-17 of plaintiff's declaration in opposition of defendants' summary judgment motion.) |
| 14. On November 23, 2015, Plaintiff had an IHC of "Racially Eligible," which is indicated as "RE." That meant that he was eligible to be housed in a cell with members of any race. He was also double-cell approved, which meant<br><br>that he could have a cellmate. At the time, Plaintiff did not have a cellmate. Accordingly, it was appropriate to re-house Plaintiff with a cell-mate, which would allow for the more efficient use of available beds and cells within the institution.<br><br>(Curry decl., ¶ 4.) | 14. Deny. There was no legitimate reason cited in plaintiff's RVR 115 as to why defendant M. Curry needed to make space for any racially exclusive housing.<br><br>(page 26 of Complaint) (page 3, 4 # 14, 15 of plaintiff's declaration in opposition of defendants' summary judgment motion.) |
| 15. When Defendant M. Curry attempted to re-house Plaintiff from cell 9-239U to 9-114U, he did so within the routine practice of CDCR. Plaintiff was to be re-housed in the first available and appropriate bed, so that additional inmates could be placed in the housing unit. Defendant M. Curry did not attempt to re-house Plaintiff for the purpose of maintaining "ethnically segregated housing."<br><br>(Curry decl., ¶ 5.) | 15. Deny. Defendant M. Curry did attempted [sic] to re-house plaintiff for the purpose of maintaining ethnically segregated housing.<br><br>(page 26 of Complaint.) (page 3, 4 # 14-17 of plaintiff's declaration in opposition to defendants' summary judgement motion.) |

8

| | |
|---|---|
| 16. Plaintiff refused to move to cell 9-114U. He told Defendant M. Curry, "I am not willing to move." Defendant M. Curry gave him another direct order to move, but Plaintiff refused again. Defendant M. Curry informed Plaintiff that he would be receiving a CDCR-115 rules violation report for refusing housing.<br><br>(Curry decl., ¶ 6.) | 16. Deny. Plaintiff never refused to move to cell 9-114a with Inmate William Washington (AT6324). Inmate Washington refuse [sic] to allow plaintiff to move in the cell with him, stating, due to prison polities, his race card would not allow this cell move. Plaintiff recieved [sic] a RVR 115 but Inmate William Washington (AT 6324) did not.<br><br>(page 19 of the Complaint) (page 3 # 12, 9, 13 of the plaintiff's declaration in opposition of defendants' summary judgement motion.) |
| 17. Thereafter, Defendant M. Curry prepared a CDCR-115 rules violation report to Plaintiff which indicated that he had attempted to rehouse Plaintiff for purposes of compaction, but that Plaintiff had refused to accept his housing assignment. At no point in attempting to re-house Plaintiff from cell 9-239-U to 9-114U did Defendant M. Curry attempt to<br><br>segregate Plaintiff based upon his race or ethnicity. Instead, Defendant M. Curry acted within the routine practice of CDCR to re-house Plaintiff in the first available and appropriate bed, so that additional inmates could be placed in the housing unit.<br><br>(Curry decl., ¶ 7.) | 17. Deny. Defendant M. Curry prepared a CDCR-115, stating he attempted to re-house plaintiff for the purpose of compaction with one of plaintiff's own ethnicity. This was a attempted [sic] to segregate plaintiff based on race or ethnicity. Compaction is a practice used by CDCR to consolidate same race inmates.<br><br>(page 26 of the Complaint) . (page 3, 4 # 8, 9 14, 15 of plaintiff's declaration in opposition to defendants' summary judgement motion.) |
| 18. During his interaction with Plaintiff on November 23, 2015, Defendant M. Curry never verbalized any discriminatory intent or purpose, or suggested that the selection of Plaintiff's housing assignment was racially motivated.<br><br>(Alem depo, 44:17-24; 46:3-14; 48:15-19; 59:2-60:5; 123:1-23.) | 18. Deny. Defendant Curry's suggestion to house plaintiff with Inmate Washington (ATC324) who is classified as "other" and no other inmate of a different ethnicity shows a racial motive.<br><br>(exhibit 4, page 123: 4-23 of plaintiff's Deposition.) (page 3-4: 8, 14-16 of plaintiff's declaration in opposition of defendants' summary judgment motion.) |
| 19. Plaintiff's sole interaction with Defendant J. Ojo regarding the allegations in the Complaint occurred during the RVR hearing.<br><br>(Alem depo, 111:7-16; 111:17-24.) | 19. Admit. |

| | |
|---|---|
| 20. During the RVR hearing, Defendant J. Ojo asked Plaintiff whether: (1) he moved into the cell, as directed by Defendant M. Curry; and (2) he followed M. Curry's orders. Plaintiff responded "no" to both questions.<br><br>(Alem depo, 69:6-13.) | 20. Admit. |
| 21. Defendant J. Ojo allowed Plaintiff to state his defense at the RVR hearing.<br><br>(Alem depo, 64:4-13, 68:22-69:1.) | 21. Admit. |
| 22. Defendant J. Ojo did not make any remarks in response to Plaintiff's allegations of racial segregation.<br><br>(Alem depo, 68:22-69:1.) | 22. Admit. |
| 23. Plaintiff did not speak with Defendant E. Arnold about the subject incident. Other than submitting an appeal, Plaintiff had no contact with Defendant E. Arnold.<br><br>(Alem depo, 98:8-17; 99:8-11.) | 23. Admit. |
| 24. The second level response to inmate appeal/grievance log number CSP-S-16-00534 is the sole basis upon which Plaintiff bases his claims against Defendant E. Arnold.<br><br>(Alem depo, 98:8-17; 99:8-11.) | 24. Admit. |
| 25. Defendant E. Arnold was not involved in the processing, review, or response to Plaintiff's inmate appeal/grievance, log number CSP-S-16-00534.<br><br>(Declaration of E. Arnold in support of motion for summary judgment ("Arnold decl."), ¶2.) | 25. Deny. Defendant Arnold was the second level Respondent. (page 5 # 24-30 of Plaintiff's declaration in opposition to defendants' summary judgment motion.) |
| 26. Defendant E. Arnold was not aware of Plaintiff's complaints, allegations, or his inmate appeal/grievance log number CSP-S-16-00534 at any time before Plaintiff filed the | 26. Deny. Defendant Arnold was the second level Respondent. (page 5 # 24-30, 33 of Plaintiff's declaration in opposition to defendants' summary judgment motion.) |

| | |
|---|---|
| instant lawsuit.<br><br>(Arnold decl., ¶ 2.) | |
| 27. Defendant E. Arnold did not sign his name to the second level response to inmate appeal/grievance log number CSP-S-16-00534.<br><br>(Arnold decl., ¶ 3.) | 27. Deny. Defendant Arnold's signature, name, title and prison of employment appear on the second level response.<br><br>(page 23 of the Complaint.) (page 5 # 29 of plaintiff's declaration in opposition to defendants' summary judgment motion.) |
| 28. Defendant E. Arnold was not involved in the November 23, 2015 incident.<br><br>(Alem depo, 111:17-24.) | 28. Admit. |

## V. DISUCSSION

In their motion for summary judgment, defendants argue: (1) plaintiff failed to satisfy the exhaustion requirements as to his claims against defendants Ojo and Arnold; (2) plaintiff presents no genuine dispute of material fact regarding his Equal Protection claims against any of the defendants; and (3) defendants are entitled to qualified immunity. The Court agrees on all three contentions.

///
///
///
///
///
///
///
///
///
///

1

**A.     Exhaustion**

2          Defendants argue that plaintiff failed to exhaust his administrative remedies

3    against defendants J. Ojo and E. Arnold. The Court agrees and concludes that defendants Ojo and

4    Arnold are entitled to judgment and a matter of law based on plaintiff's failure to exhaust.

5          Under the Prison Litigation Reform Act (PLRA), prisoners seeking relief under

6    § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C.

7    § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner,

8    532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because

9    exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved

10   by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311

11   F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court addressed the exhaustion requirement in

12   Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or

13   demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense

14   which must be pleaded and proved by the defendants; (2) an individual named as a defendant

15   does not necessarily need to be named in the grievance process for exhaustion to be considered

16   adequate because the applicable procedural rules that a prisoner must follow are defined by the

17   particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of

18   the entire complaint if only some, but not all, claims are unexhausted.  The defendant bears

19   burden of showing non-exhaustion in first instance.  See Albino v. Baca, 747 F.3d 1162, 1172

20   (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the grievance process was

21   not available, for example because it was thwarted, prolonged, or inadequate.  See id.

22         The Supreme Court held in Woodford v. Ngo that, in order to exhaust

23   administrative remedies, the prisoner must comply with all of the prison system's procedural

24   rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

25   exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

26   Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

27   which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

28   at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

1    quantity of prisoner suits "because some prisoners are successful in the administrative process,

2    and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

3            A prison inmate in California satisfies the administrative exhaustion requirement

4    by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of

5    Regulations.  In California, inmates "may appeal any policy, decision, action, condition, or

6    omission by the department or its staff that the inmate . . . can demonstrate as having a material

7    adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

8    The inmate must submit their appeal on the proper form, and is required to identify the staff

9    member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit.

10   15, § 3084.2(a).  These regulations require the prisoner to proceed through three levels of appeal.

11   See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level,

12   which is also referred to as the director's level, is not appealable and concludes a prisoner's

13   departmental administrative remedy.  See id.  Departmental appeals coordinators may reject a

14   prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive

15   appeals, use of improper language, failure to attach supporting documents, and failure to follow

16   proper procedures.  See Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate

17   is to be provided clear instructions how to cure the defects therein.  See Cal. Code Regs. tit. 15,

18   §§ 3084.5(b), 3084.6(a).  Group appeals are permitted on the proper form with each inmate

19   clearly identified, and signed by each member of the group.  See Cal. Code Regs. tit 15, §

20   3084.2(h).

21           Defendants argue that plaintiff failed to exhaust his administrative remedies

22   against either defendant Ojo or Arnold because neither is mentioned in plaintiff's grievances.

23   Specifically, defendants state:

24           In the present case, Plaintiff submitted several inmate
             appeals/grievances to the CSP-Solano IAO from November 23, 2015 to
25           February 16, 2017, but only one of them discussed facts that touch upon
             the equal protection allegations that Plaintiff raised in his Complaint: CSP-
26           S-16-00534 (also referred to as SOL-16-00534). (DUF 2.) . . .
             Plaintiff exhausted CSP-16-00534 to the third level of review, but
27           this appeal/grievance did not contain any allegations against Defendants J.
             Ojo or E. Arnold. (DUF 4, 7, 8.)
28

* * *

Plaintiff admits that he did not address any issues against Defendants J. Ojo or E. Arnold in the applicable inmate appeal/grievance. (DUF 11.) Thus, the record is clear—Plaintiff did not exhaust his administrative remedies as to Defendants J. Ojo or E. Arnold. Accordingly, the Court should grant summary judgment in favor of Defendants J. Ojo and E. Arnold.

ECF No. 34-1, pg. 12.

1.    Defendant Ojo

Plaintiff concedes that he did not specifically reference defendant Ojo in the administrative grievance process. See ECF No. 37, pg. 11. However, plaintiff argues that, despite this omission, he satisfied his exhaustion requirements in accordance with the case Wolff v. Moore, 199 F.3d 324 (6th Cir. 1999).

In Wolff v. Moore, plaintiff, a former inmate, filed a 42 U.S.C.S. § 1983 action against defendants claiming that they used excessive force against him. Id. at 326. Plaintiff's claim arose before the enactment of the PLRA, but his complaint was filed after the enactment. A Magistrate Judge for the United States District Court for the Southern District of Ohio held that plaintiff was not required to comply with the administrative exhaustion requirement of the PLRA, and that plaintiff had exhausted such remedies because the facts were "closely intertwined with the excessive force claim." Id. at 329. Defendants appealed and the appellate court held that plaintiff's excessive force complaint was in fact subject to the administrative exhaustion requirement of the PLRA. However, the court also held that plaintiff had substantially complied with the applicable administrative process, and that was all that was required because plaintiff's claim arose before the effective date of the PLRA. Id.

Here, plaintiff argues that his situation "mirrors" the situation in Wolff. Plaintiff states that ". . . the Third Level of Review, Appeals examiner K.Z. Allen acknowledged the [Senior Hearing Officer (SHO)] Lieutenant J. Ojo, found plaintiff guilty of the rules violation and that defendant J. Ojo acted appropriately in making his decision." ECF No. 37, pg. 31. According to plaintiff, this fact, coupled with the legal precedent set forth in Wolff satisfied his exhaustion requirements.

14

1    Plaintiff's reliance on <u>Wolff</u> is misplaced. The court in <u>Wolff</u> applied a

2    "substantial compliance" standard, as opposed to the PLRA's exhaustion requirements, in a

3    situation where the plaintiff's underlying claim arose before the PLRA's enactment. "When the

4    claim in question arises before the effective date of the Reform Act, but the complaint is filed

5    afterwards, the application of this precondition is satisfied where [] there has been substantial

6    compliance with the applicable administrative process." <u>Wolff</u>, 199 F.3d at 327. As is obvious

7    from the record here, plaintiff's claims arose well after the PLRA was enacted. As such,

8    compliance with the PLRA's provisions was mandatory and plaintiff was required to identify the

9    staff members involved in the alleged deprivation of his Equal Protection rights. <u>See</u> 42 U.S.C.

10    § 1997e(a); <u>see</u> <u>also</u> Cal. Code Regs. tit. 15, § 3084.2(a).  It is clear here that plaintiff failed to

11    identify defendant Ojo throughout the administrative appeals process.

12              2.    <u>Defendant Arnold</u>

13    As for defendant Arnold, plaintiff argues that he satisfied his exhaustion

14    requirement because plaintiff ". . . named the Warden [Arnold] in the Third [Level of Appeal]."

15    ECF No. 37, pg. 32. Here, the Court is similarly unconvinced. Plaintiff made no particular

16    allegations against Arnold in connection to his Equal Protection claims. Plaintiff simply stated

17    that he was "dissatisfied with the Second Level response" and that plaintiff "[could] only surmise

18    that the Warden [Arnold] supports [Curry's] segregationist behavior." ECF No. 1, pg. 31. Simply

19    mentioning a defendant is not sufficient to satisfy a plaintiff's exhaustion requirements under the

20    PLRA. A plaintiff must identify the staff members involved as well as describe their involvement

21    in the issue.  <u>See</u> Cal. Code Regs. tit. 15, § 3084.2(a).

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

15

1

**B.**      **Equal Protection Claims**

2       Defendants argue there is no evidence to establish they violated plaintiff's Equal

3   Protection rights. The Court agrees.

4       "Prisoners are protected under the Equal Protection Clause of the Fourteenth

5   Amendment from invidious discrimination based on race." Woldd v. McDonnell, 418 U.S. 539,

6   556 (1974); see also Turner v. Safley, 482 U.S. 78, 8 (1987). Racial segregation is

7   unconstitutional within prisons "save for 'the necessities of prison security and discipline.'" Cruz

8   v. Beto, 405 U.S. 319, 321 (1972) (per curiam) (quoting Lee v. Washington, 390 U.S. 333, 334

9   (1968) (per curiam)).  To establish a race-based violation of the Equal Protection Clause, the

10   prisoner must present evidence of discriminatory intent. See Washington v. Davis, 426 U.S. 229,

11   239-40 (1976); see also Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).

12       1.      Defendant Curry

13       Defendants argue that Curry did not violate plaintiff's Equal Protection rights

14   because his attempts to re-house plaintiff were for a racially neutral purpose. Specifically,

15   defendants state that:

16
> It was the routine practice of CDCR, pursuant to the CDCR
> Departmental Operations Manual ("DOM") section 54055.7, to house
> inmates on the first available and appropriate bed, consistent with their
> Integrated Housing Code (IHC). (DUF 13.) An Integrated Housing Code
> is a housing code that reflects an inmate's eligibility to be racially
> integrated in a housing environment. (Id.) An inmate's IHC is determined
> during reception center processing. (Id.)
>       On November 23, 2015, Plaintiff had an IHC of "Racially
> Eligible," which is indicated as "RE." (DUF 14.) That meant that he was
> eligible to be housed in a cell with members of any race. (Id.) He was also
> double-cell approved, which meant that he could have a cellmate. (Id.) At
> the time, Plaintiff did not have a cellmate. (Id.)
>       On November 23, 2015, Defendant M. Curry attempted to re-house
> Plaintiff, from cell 9-239U to 9-114U for the purpose of compaction.
> (DUF 12.) Compaction is the maximum proper utilization of beds within
> an institution. (Id.) In other words, compaction involves housing as many
> inmates as possible with cellmates, when appropriate and safe, to ensure
> that as many beds and cells within the institution are used most efficiently
> to accommodate additional inmates in a housing unit. (Id.)
>       When Defendant M. Curry attempted to re-house Plaintiff from
> cell 9-239U to 9-114U, he did so within the routine practice of CDCR.
> (DUF 15.) Plaintiff was to be re-housed in the first available and
> appropriate bed, so that additional inmates could be placed in the housing
> unit. (Id.) Defendant M. Curry did not attempt to re-house Plaintiff for the
> purpose of maintaining "ethnically segregated housing." (Id.) During his

17

18

19

20

21

22

23

24

25

26

27

28

16

1    interaction with Plaintiff on November 23, 2015, Defendant M. Curry
2    never verbalized any discriminatory intent or purpose, or suggested that
     the selection of Plaintiff's housing assignment was racially motivated.
     (DUF 18.)

3    ECF No. 34-1, pgs. 14-15.

4

5    Plaintiff argues that there is a material dispute as to whether Curry's actions were

6    racially motivated and discriminatory. According to plaintiff:

7        The declarations of the plaintiff and defendant are squarely
         contradictory as to if plaintiff refused to re-house, if defendant M. Curry
8        use race/ethnicity to re-house plaintiff and if defendant Arnold is the
         Author [sic] of the second level appeal decision. The allegations in the
9        plaintiff's declaration portray a completely needless attempt to re-house
         plaintiff with someone of his own ethnicity (other) and only with someone
10       of his own ethnicity (other), when plaintiff could of [sic] been housed with
         someone of another ethnicity when refused by Inmate William
11       Washington (AT6324). [. . .]

12   ECF No. 37, pg. 29

13   The Court agrees with defendants.  Defendants assert that Curry relocated plaintiff

14   to free up cell space and acted in accordance with non-discriminatory CDCR procedure. Despite

15   plaintiff's blanket denials, it appears undisputed that: (1) "[i]t is the policy of the [CDCR] that

16   race will not be used as a primary determining factor in housing its inmate population[2]," ECF No.

17   34-4, pg. 136, § 54055.1; (2) inmates deemed "Racially Eligible" (RE) under the CDCR's

18   Integrated Housing Code (IHC), may be housed in a cell with members of any race, id. at §

19   54055.5.1; (3) plaintiff was designated as RE at the time of the incident and could have been

20   housed with a cellmate of any race[3], ECF No. 34-4, pg. 133; and (4) plaintiff was allowed to have

21   a cellmate and did not have one at the time of the incident, id.

22   According to defendants, Curry acted within the routine practice of the CDCR and

23   attempted to re-house plaintiff "in the first available and appropriate bed, so that additional

24   inmates could be placed in the housing unit." Id. at pg. 134. Because CDCR policy justified

25   plaintiff's cell transfer, and defendant Curry claims that he acted purely in accordance with that

26       [2]    Plaintiff's assertion that "it is the [routine] practice of CDCR to house inmates by
27   race" is unsupported by the evidence presented. See ECF No. 37, pg. 4, ¶ 17.
         [3]    Plaintiff does not refute that he was designated RE, and admits that "there [were]
28   inmates of different races that plaintiff could have been house with. . ." ECF No. 37, pg. 4, ¶ 16.

1  policy, it is now incumbent on plaintiff to demonstrate that a genuine dispute exists as to

2  defendant Curry's motives.

3          Plaintiff's conclusory assertion that a genuine issue of material fact exists is not

4  well taken.  Federal Rule of Civil Procedure 56(c)(1) explicitly states that "[a] party asserting that

5  a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of

6  materials in the record . . . or (B) showing that the materials cited do not establish the absence or

7  presence of a genuine dispute . . ." Fed. R. Civ. P. 56(c)(1). Here, plaintiff's claim that Curry's

8  actions were motivated by discriminatory intent is supported solely by the assertion in plaintiff's

9  declaration that "[c]ontrary to defendant Curry's declaration, this cell move was racially

10 motivated because he attempted to compact plaintiff with someone of his own ethnicity . . ." ECF

11 No. 37, pg. 3. Sworn declarations by a moving party are the sort of "materials in the record"

12 which may demonstrate a genuine dispute. See Fed. R. Civ. P. 56(c)(1)(A). However, plaintiff's

13 assertion that Curry's actions were racially motivated are entirely conclusory and unsupported by

14 any other document submitted to the Court for review.

15         Plaintiff merely speculates that, because he was placed in a cell with a person of

16 the same race despite objections, that Curry's motivations were discriminatory as opposed to

17 procedural. While plaintiff is entitled to all reasonable inferences in his favor at the summary

18 judgment stage, ". . .inferences are not drawn out of the air, and it is the opposing party's

19 obligation to produce a factual predicate from which the inference may be drawn." See Richards

20 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

21 (9th Cir. 1987). Here, it is evident that nothing supports plaintiff's assertion of discriminatory

22 intent other than his own speculation.  Plaintiff's transfer was conducted in full compliance with

23 CDCR policy, and his sole contention appears to be that winding up in a cell with a person of the

24 same race can only be explained by a drive to segregate the prison. However, plaintiff provides

25 no evidence upon which a reasonable trier of fact could determine that such an explanation is

26 credible. Therefore, there is no material dispute as to a key element of plaintiff's Equal Protection

27 claim and defendant Curry is entitled to summary judgment.

28 ///

1          2.      Defendant Ojo

2          Defendants argue that defendant Ojo's limited interaction with plaintiff during the

3  RVR hearing did not amount to an Equal Protection violation. According to defendants:

4              . . .During the RVR hearing, Defendant J. Ojo asked Plaintiff
        whether: (1) he moved into the cell, as directed by M. Curry; and (2) he
5        followed M. Curry's orders. (DUF 20.) Plaintiff responded "no" to both
        questions. (Id.) Defendant J. Ojo allowed Plaintiff to state his defense at
6        the hearing. (DUF 21.) After Plaintiff stated his defense, Defendant J. Ojo
        did not make any remarks in response to Plaintiff's allegations of racial
7        segregation from which a discriminatory intent could be inferred. (DUF
        22.)
8              Thus, the evidence shows that Defendant J. Ojo conducted an
        appropriate RVR hearing: Plaintiff was afforded the opportunity to present
9        a defense; Defendant J. Ojo asked appropriate questions to make a
        determination; and Defendant J. Ojo did not make any remarks from
10       which an intent to discriminate against Plaintiff may be inferred. (DUF 19-
        22.) Simply, Defendant J. Ojo made a factual determination that Plaintiff
11       refused to comply with an order to re-house, based on Plaintiff's own
        admission of this fact. Just because Plaintiff's RVR defense was not
12       persuasive does not mean that his equal protection rights were violated, or
        that the ultimate decision was racially motivated. The law requires a
13       showing by a preponderance of the evidence that the decision was racially
        motivated. Serrano, 345 F.3d at 1082. No such evidence exists.
14       Accordingly, Defendant J. Ojo is entitled to summary judgment.

15         ECF No. 34-1, pg. 16.

16         Plaintiff admits to meeting with Ojo for an RVR hearing and admits to responding

17  "no" to both of Ojo's questions. However, plaintiff contends that this did not mean that he

18  "refuse[d] to be housed." See ECF No. 37, pg. 26. Regardless, plaintiff's Equal Protection claim

19  against defendant Ojo is completely unsupported. "To avoid summary judgment, [plaintiff] 'must

20  produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the

21  evidence that the [defendant's] decision was racially motivated.'" Serrano v. Francis, 345 F.3d

22  1071, 1082 (9th Cir. 2003) (citing Bingham v. City of Manhattan Beach, 329 F.3d 723, 732 (9th

23  Cir. 2003)). Here, plaintiff neither alleges, nor provides evidence, that Ojo's determination was

24  racially motivated or guided by a discriminatory intent. Based on the information provided to

25  him, Ojo made a factual determination that plaintiff refused to comply with an order to re-house.

26  To the extent plaintiff considers Ojo's determination erroneous, he provides no basis upon which

27  it could be plausibly determined that such an error was driven by racial animus. Therefore,

28  plaintiff's Equal Protection claim against defendant Ojo also fails.

1          3.      Defendant Arnold

2          Defendants argue that defendant Arnold's limited involvement with plaintiff's

3   administrative grievances does not establish an Equal Protection violation. Specifically,

4   defendants argue:

5                  Plaintiff did not speak with Defendant E. Arnold about the subject
                   incident. (DUF 23.) Other than submitting an appeal, Plaintiff had no
6                  contact with Defendant E. Arnold. (Id.) The second level response to
                   inmate appeal/grievance log number CSP-S-16-00534 is the sole basis
7                  upon which Plaintiff bases his claims against Defendant E. Arnold. (DUF
                   24.)
8                  Defendant E. Arnold was not involved in the processing, review,
                   or response to Plaintiff's inmate appeal/grievance, log number CSP-S-16-
9                  00534. (DUF 25.) Defendant E. Arnold was not aware of Plaintiff's
                   complaints, allegations, or his inmate appeal/grievance log number CSP-
10                 S-16-00534 at any time before Plaintiff filed the instant lawsuit. (DUF
                   26.) Defendant E. Arnold did not sign his name to the second level
11                 response to inmate appeal/grievance log number CSP-S-16-00534. (DUF
                   27.) Defendant E. Arnold was not involved in the November 23, 2015
12                 incident. (DUF 28.)
                   In other words, there are no facts to suggest that Defendant E.
13                 Arnold was in any way involved in the incident or its aftermath. He
                   neither violated Plaintiff's equal protection rights, participated in the
14                 violation of his equal protection rights, or omitted to perform an act, which
                   he was legally required to do that caused a deprivation of Plaintiff's equal
15                 protection rights.

16          ECF No. 34-1, pg. 17.

17          Plaintiff argues that: (1) defendant Arnold was the second-level respondent during

18   the administrative grievance process, ECF No. 37, pg. 5; (2) Arnold denied plaintiff's second-

19   level appeal, id.; (3) Arnold "agreed with defendant M. Curry's actions to house plaintiff by race

20   in his second level response . . .", id.; and (4) Arnold agreed with Ojo's RVR determination

21   despite plaintiff's objections that his housing orders amounted to racial segregation, id.

22          The Court concludes that it is undisputed that "[t]he second level response to

23   inmate appeal/grievance log number CSP-S-16-00534 is the sole basis upon which [p]laintiff

24   bases his claims against [d]efendant E. Arnold." ECF No. 37, pg. 17. As such, plaintiff is required

25   to demonstrate that Arnold's involvement[4] in assessing his grievance at the second level resulted

26   _____

27          [4]     The record shows that "E. Arnold" submitted and signed the "Second Level
     Response to Appeal Log #CSP-S-16-00534." ECF No. 34-4, pgs. 13-14. The response addresses
28   plaintiff's racial segregation claim and denies his appeal at the second level. Id. Defendant Arnold
     alleges that he did not personally review plaintiff's appeal, that his name was simply typed at the

                                          20

1    in discriminatory conduct in violation of the Fourteenth Amendment. However, as with

2    defendants Curry and Ojo, plaintiff has failed to present any evidence which would create a

3    genuine dispute as to whether Arnold's conduct was discriminatory. Plaintiff's appeal was denied

4    at the second level because plaintiff ". . . failed to provide proof officer Curry's action to have

5    him move into a new cell with a cellmate was against Department policy and/or any court

6    decisions." ECF No. 34-4, pg. 14. Plaintiff is unable to plausibly demonstrate that this finding

7    was either erroneous or a pretext for racial discrimination. Therefore, plaintiff's Equal Protection

8    claim fails against defendant Arnold.

9        **C.    Qualified Immunity**

10            As discussed above, the Court finds that plaintiff has failed to establish a valid

11   Equal Protection claim at the summary judgment stage. However, in the event the District Judge

12   finds a genuine dispute as to plaintiff's Equal Protection claims, the undersigned provides the

13   following analysis.

14            Government officials enjoy qualified immunity from civil damages unless their

15   conduct violates "clearly established statutory or constitutional rights of which a reasonable

16   person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

17   qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

18   law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

19   immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

20   injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

21   v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

22   the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific

23   context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is

24   alleged to have violated must have been 'clearly established' in a more particularized, and hence

25   more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

26   ───────────────────

27   bottom of the page, and that the signature above his printed name belongs to another CDCR
     employee. Id. at 139. Thus, it may be disputed whether defendant Arnold personally reviewed
     plaintiff's appeal. However, assuming, arguendo, that Arnold did in fact review plaintiff's appeal

28   at the second level, it does not alter the Court's finding as described in section (V)(B)(3).

1    official would understand that what he is doing violates that right." Id. at 202 (citation omitted).

2    Thus, the final step in the analysis is to determine whether a reasonable officer in similar

3    circumstances would have thought his conduct violated the alleged right. See id. at 205.

4              When identifying the right allegedly violated, the court must define the right more

5    narrowly than the constitutional provision guaranteeing the right, but more broadly than the

6    factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th

7    Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently

8    clear that a reasonable official would understand [that] what [the official] is doing violates the

9    right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court

10   concludes that a right was clearly established, an officer is not entitled to qualified immunity

11   because a reasonably competent public official is charged with knowing the law governing his

12   conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff

13   has alleged a violation of a clearly established right, the government official is entitled to

14   qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

15   did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

16   also Saucier, 533 U.S. at 205.

17             The first factors in the qualified immunity analysis involve purely legal questions.

18   See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal

19   determination based on a prior factual finding as to the reasonableness of the government

20   official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court

21   has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan,

22   555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light

23   most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. See

24   Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

25             The Court finds all defendants are entitled to qualified immunity. It is initially the

26   plaintiff's burden to allege a violation has been clearly established such that the officers should

27   have been on notice. Luna v. Ridge, 436 F. Supp. 2d 1163, 1173 (S.D. Cal. 2006) ("[b]road

28   generalities in the articulation of the constitutional right at issue . . . are insufficient to identify a

clearly established right . . .").  "Except in the rare case of an 'obvious' instance of constitutional misconduct . . . [p]laintiffs must *identify a case* where an officer acting under similar circumstances as [defendants] was held to have violated [plaintiff's constitutional rights]." Sharp v. Cty. of Orange, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original) (quoting White v. Pauly, 137 S.Ct. at 552).

As discussed above, plaintiff's claims against defendants are incredibly scant on facts upon which a connection can be made between their conduct and a violation of plaintiff's rights. Defendant Curry's sole interaction with plaintiff was when he ordered plaintiff to relocate cells. As discussed above, this relocation was done in full accordance with CDCR procedure and nothing in the record suggests otherwise. As for defendants Ojo and Arnold, both defendants' interactions with plaintiff were solely as reviewers of plaintiff's administrative grievances. Ojo was the officer who interviewed plaintiff for his RVR hearing, ultimately found Curry's descriptions of events credible, and issued plaintiff a rules violation citation. Arnold was the warden who, allegedly, denied plaintiff's administrative appeal at the second level; also relying on the sincerity of Curry's claim to have followed procedure. It is undisputed that both plaintiff's RVR hearing and the second-level determination were part of the exhaustion process required to be completed by plaintiff prior to filing this action. To the extent that any defendant's conduct during these processes violated plaintiff's rights, it is not clear exactly how so. Thus, these are not "obvious" instances of constitutional misconduct. As such, plaintiff must demonstrate legal precedent where an officer acting under similar circumstances as defendants was held to have violated plaintiff's constitutional rights. See Sharp v. Cty. of Orange, 871 F.3d 901, 911 (9th Cir. 2017). "In other words, [plaintiff] must point to prior case law that articulates a constitutional rule specific enough to alert *these* [officers] *in this case* that *their particular conduct* was unlawful." Id. Plaintiff provides no such precedent in his opposition and has thus clearly failed in this burden.

**V. CONCLUSION**

Based on the foregoing, the undersigned recommends that Defendant's motion for

1   summary judgment (ECF No. 34) be granted in full.

2           These findings and recommendations are submitted to the United States District

3   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

4   after being served with these findings and recommendations, any party may file written objections

5   with the court.  Responses to objections shall be filed within 14 days after service of objections.

6   Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

7   Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  Dated:  May 6, 2020

                                              DENNIS M. COTA
                                              UNITED STATES MAGISTRATE JUDGE